UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|   |   |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTER AND TRAP AND TRACE DEVICES ON BLACKBERRY PIN 31C0A2F6 | ) ) ) ) ) Filed Under Seal ) ) ) ) |

## APPLICATION

The United States of America, moving by and through Assistant United States Attorney Anna Z. Krasinski, its undersigned counsel, respectfully submits under seal this *ex parte* application for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen register and trap and trace devices ("pen-trap devices") to capture dialing, routing, addressing, and signaling information on electronic communications generated or received by a BlackBerry device assigned Personal Identification Number ("PIN") 31C0A2F6 which is believed to be used by Manny Barroso.

In support of this application, the United States asserts:

1. This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of pen register and a trap and trace devices.

2. Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4. The law enforcement agency conducting the investigation is the Drug Enforcement Administration ("DEA"). The DEA is being assisted in this investigation by other state, local, and federal investigative agencies.

5. The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation of Manny Barroso, and others that is being conducted by the DEA.

## ADDITIONAL INFORMATION

6. Other than the three elements described above, federal law does not require that an application for an order authorizing the installation and use of a pen register and a trap and trace device specify any facts. The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize the use of a pen register or trap and trace device under 18 U.S.C. § 3123(a)(1).

7. A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8. In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

9. Blackberry Corporation ("BlackBerry") provides electronic communication services via BlackBerry smartphones that function using both cellular and wireless data connections. Cellular telephone service is provided to a BlackBerry handheld device by wireless cellular carriers, such as Verizon, Sprint, or AT&T. SMS text messaging and traditional cellular phone voice communications are provided via a wireless cellular carrier's network. Other electronic communications services accessible via a BlackBerry device are transmitted via BlackBerry's infrastructure, including, secure wireless access to the Internet, secure PIN to PIN communications from one BlackBerry device to another (via BlackBerry's infrastructure and explained below), BlackBerry Messenger Communications (a proprietary branded instant messaging service available from BlackBerry and carried on its own infrastructure), email, and Internet World Wide Web browsing (web browsing).

10. A BlackBerry user may engage in PIN-to-PIN or Peer-to-Peer communications between BlackBerry smartphones. A PIN is a unique eight-digit alphanumeric identifier assigned to each handheld Blackberry device. When using the PIN-to-PIN method to communicate, instead of sending a message to an email address, the message is routed within BlackBerry's network infrastructure from one BlackBerry handheld device to another, bypassing the BlackBerry Enterprise Server ("BES") and/or BlackBerry Internet Server ("BIS"). PIN numbers function similar to the telephone numbers of incoming and outgoing calls, because they indicate

origin(s) and destination(s). PINs can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's content.

11. BlackBerry Messenger service allows a BlackBerry user to send a message (a "BBM message") of unlimited length, to set up a group chat, to transfer files, and to share contacts, videos, photos and music files with other Blackberry users. When using the BlackBerry Messenger service to communicate, the message is routed within BlackBerry's network infrastructure. Unlike an e-mail message, which is stored on a network server maintained by the provider, BBM messages are merely routed to a relay server managed by BlackBerry, which does not store the communication, but simply routes the communication to the receiving BlackBerry handheld device as soon as the receiver is on-line.

12. A BlackBerry user can access the Internet through the BlackBerry infrastructure network, the cellular carrier associated with a particular BlackBerry device, or a WiFi access point. A BlackBerry user can use a home wireless router, or a public wireless hotspot Internet data connection to access the Internet through one of BlackBerry's service offerings, such as the BES and/or BIS. A BlackBerry customer can send and receive emails and instant messages using BlackBerry's Internet Service or by accessing third-party software applications, such as web-based email services or social networking services.

13. An Internet email message has its own routing header, in addition to the source and destination information associated with all Internet data packets. The message header of an email contains the message's source and destination(s), expressed as email addresses in "From," "To," "CC" (carbon copy), or "BCC" (blind carbon copy) fields. Multiple destination addresses may be specified in the "To," "CC," and "BCC" fields. The email addresses in an email's message header are like the telephone numbers of both incoming and outgoing calls, because

they indicate both origin and destination(s). They can be recorded by pen-trap devices and can be used to identify parties to a communication without revealing the communication's contents.

14. A BlackBerry subscriber can add up to 10 separate Internet web-based email account addresses to be integrated to a BlackBerry smartphone. Examples of Internet web-based email services include Microsoft Hotmail, Yahoo! Mail, and Google Mail (Gmail). The BlackBerry Internet Service regularly checks the integrated email account, sends the new messages to BlackBerry's infrastructure, and then automatically delivers the email messages to the subscriber's BlackBerry smartphone over the wireless network.

## THE RELEVANT FACTS

15. The United States government, including the DEA, is investigating the distribution of oxycodone pills. The investigation relates to drug trafficking in and around Nashua, New Hampshire. The primary individual under investigation is Manny Barroso. The investigation concerns possible violations of, *inter alia*, 21 U.S.C. §§ 846, 843(b), and 841(a)(1).

16. The conduct being investigated involves use of the cell phone number (978) 935-8836, which is believed to be used by Manny Barroso to distribute controlled substances. Specifically, law enforcement has learned that Barroso uses this telephone to arrange oxycodone distribution. BBM PIN 31C0A2F6 is associated with that telephone.

17. To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from that BlackBerry device via all electronic communication services operating on the device.

18. The pen-trap devices sought by this application will be installed at location(s) to be determined, and will collect dialing, routing, addressing, and signaling information associated

5

with each communication to or from the subject devices, but not limited to, the date, time, and duration of the communication, and the following, without geographic limit:

- PINs utilized to send or receive communications
- Headers of email messages, including the source and destination network addresses, as well as the routes of transmission and size of the messages, but not content located in headers (such as subject lines)
- The number and size of any attachments to email messages or BlackBerry Messenger communications.

## GOVERNMENT REQUESTS

19. For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the subject devices, along with the date, time, and duration of the communication, without geographic limit. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

20. The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days, pursuant to 18 U.S.C. § 3123(c)(1).

21. The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order BlackBerry and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity

providing such assistance shall be reasonably compensated by the DEA, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

22.     The United States further requests that the Court order BlackBerry and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the DEA of any changes relating to the subject devices, including changes to subscriber information, and to provide prior notice to the applicant and the DEA before terminating or changing service to the subject devices.

23.     The United States further requests that the Court order that the DEA and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

24.     The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order BlackBerry and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting pen-trap devices, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court.

25.     The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

26.     The United States further requests that the Clerk of the Court provide the United States Attorney's Office with three certified copies of this application and Order, and provide copies of this Order to the DEA and BlackBerry upon request.

27. The foregoing is based on information provided to me in my official capacity by agents and task force officers of the DEA.

I declare under penalty of perjury that the foregoing is true and correct.

December 12, 2018

Respectfully submitted,

Scott W. Murray
United States Attorney


By: /s/ Anna Z. Krasinski
    Anna Z. Krasinski
    Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTER AND TRAP AND TRACE DEVICES ON BLACKBERRY PIN 31C0A2F6 | ) ) ) ) ) Filed Under Seal ) ) ) ) |

ORDER

Assistant United States Attorney Anna Z. Krasinski, on behalf of the United States, has submitted an application pursuant to 18 U.S.C. §§ 3122 and 3123, requesting that the Court issue an Order to BlackBerry Corporation ("BlackBerry") (located at 5000 Riverside Drive, Suite 100E, Irving, Texas 75039), authorizing the installation and use of pen register and trap and trace devices ("pen-trap devices") on a BlackBerry device assigned PIN 31C0A2F6 which is believed to be used by Manny Barroso.

The Court finds that an attorney for the government has submitted the application and has certified that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation that is being conducted by the Drug Enforcement Administration ("DEA") of individuals in connection with possible violations of 21 U.S.C. §§ 843(b) and 841(a)(1).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 3123, that pen-trap devices may be installed and used within the United States to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the subject

devices, including, but not limited to, the date, time, and duration of the communication, and the following, without geographic limit:

- PINs utilized to send or receive communications
- Headers of email messages, including the source and destination network addresses, as well as the routes of transmission and size of the messages, but not content located in headers (such as subject lines)
- The number and size of any attachments to email messages or Blackberry Messenger communications.

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for sixty (60) days from the date of this Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the BlackBerry and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service;

IT IS FURTHER ORDERED that the DEA reasonably compensate BlackBerry and any other person or entity whose assistance facilitates execution of this Order for reasonable expenses incurred in complying with this Order;

IT IS FURTHER ORDERED that BlackBerry and any other person or entity whose assistance may facilitate execution of this Order notify the applicant and the DEA of any changes relating to the subject devices, including changes to subscriber information, and to provide prior notice to the DEA before terminating or changing service to the subject devices;

IT IS FURTHER ORDERED that the DEA and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the DEA, for the duration of the Order;

IT IS FURTHER ORDERED, pursuant to 18 U.S.C. § 3123(d)(2), that BlackBerry and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the application and this Order, the pen-trap devices, or the investigation to any person, except as necessary to effectuate this Order, unless and until otherwise ordered by the Court;

IT IS FURTHER ORDERED that the Clerk of the Court shall provide the United States Attorney's Office with three certified copies of this application and Order, and shall provide copies of this Order to the DEA and BlackBerry upon request; and

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

_____  _____
Date                                                     Andrea K. Johnstone
                                                         United States District Judge